Hand-Delivered

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

JAN 04 2024

US DISTRICT COURT
WESTERN DISTRICT OF NC

CEDRIC DEAN,

SUSAN MILLS DEAN,

    Pro Se Plaintiffs,

    v.

CHARLOTTE MECKLENBURG SCHOOLS
    Respondent.

JURY TRIAL DEMANDED

3:24-cv-07-MOC

## INTRODUCTION

At all material times, the Respondent was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, et seq. for its activities. The plaintiffs in this action are parents of a developmentally delayed minor student, Josh Day, at Mallard Creek High School in Charlotte, N.C. who alleges that when Josh requested help from Respondent before a sexual assault by Anthony Troup, a fellow student, the Respondent responded with deliberate indifference. Plaintiffs assert their claims under Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex in all federally-funded educational programs. 20 U.S.C. § 1681(a).

First, Plaintiffs assert a "*port-reporting*" claim that Respondent's response to Josh's report of sexual assault deprived Josh of educational opportunities and benefits on the basis of his gender.

Second, Plaintiff assert a "*heightened risk*" claim that even before Josh's report of sexual assault, the Respondent maintained discriminatory practices in handling male student reports of sexual assault—such as discouraging victims and staff from reporting male on male sexual assaults and failing to investigate claims or punish assailants—which constituted a policy of intentional discrimination on the basis of gender and substantially increased Josh's risk of being sexually assaulted.

Plaintiffs seek actual damages, compensatory damages, nominal damages, court and litigation costs, expert fees, statutory interest and injunctive relief. As injunctive relief, they seek a mandatory injunction that orders Respondent to refrain from unlawful discrimination and/or retaliation, ordering Respondent to undertake and rectify any and all Title IX violations and/or inequities, ordering Respondent and its schools to refrain from creating and condoning a hostile sexual harassment and/or discrimination environment against individuals on the basis of sex by immediately ceasing deliberate indifference to male on male sexual assaults; and cease interference with the disciplinary process in favor of students who commit sexual assault.

## LEGAL STANDARDS

### 1. SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights. Plaintiffs bring this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein. This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Respondents through the Fourteenth Amendment to the United States Constitution. Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law including breach of contract and negligence. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Parties reside or resided in this district and the events giving rise to the claims occurred in this district.

### 2. APPLICABLE LAW

Plaintiffs seeks injunctive relief: "Title IX policy relief" to compel future system-wide policy, procedures for reports of student sexual violence, and related student code of conduct enforcement. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that: *"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance .... "*

A. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 19. 34 C.F.R. § 106.8(b) which provides: " ... *A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.*"

B. In Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination. In Davis v. Monroe County Board. of Education, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in Gebser to cases where the harasser is a student, rather than a teacher.

C. Davis held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is: a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis, 526 U.S. at 1669-76.

D. Title IX jurisprudence as well as Department of Education regulations have long recognized that a single event of rape constitutes harassment so severe, pervasive and objectively offensive that it deprives its victims of access to the educational opportunities provided by the school: "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe. For instance, a single instance of rape is sufficiently severe to create a hostile environment."

E. Regardless, in the circumstances giving rise to the claims of these Plaintiffs, and others, a significant history of student harassment, resulting from deliberate indifference, has been allowed to continue at in the Respondent's schools for many years.

F. North Carolina law provides protections for students and requires the exercise of reasonable care on the part of the School System.

G. North Carolina law provides for the protection of students from foreseeable criminal harm.

3. PARTIES

Plaintiffs, consistent with the values set forth in the constitution, seek to remove all barriers of sex discrimination through Title IX and the enactment and enforcement of federal, state, and local laws securing civil rights, including laws relating to equal rights.

In violation of Title IX, Josh Day's personal liberties have been frustrated by the Respondent's conduct, which has violated traditional equal protection rights. Further, Plaintiffs used their limited resources to provide the Title IX investigator with clear and irrefutable evidence of the sexual assault and the deliberate indifference with the cover-up, specifically by directing the investigator to interview John Davidyock, review video surveillance from the gym, inquire about past unreported sexual assault incidents, to comply with the Fourteenth Amendment and other legal requirements.

The current absence of a constitutionally and legally compliant Title IX reporting system and Respondent's apparent refusal to protect the equal protection rights of students also harms plaintiffs' son, because it produces disparate treatment.

4. DISPARATE TREATMENT

At all material times, the Respondent was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, et seq. for its activities. Plaintiffs' disparate treatment claim refers to the Respondent's actions that treated female students differently on the basis of a prohibited classification. In the case of Josh Day, the prohibited classification is sex. Under the disparate treatment theory of discrimination, the core question is whether the Respondent, through John Davidyock, treated Josh Day differently on the basis of sex. Here, the applicable legal standards under Title VI and Title IX are generally identical and the Court can rely on case law decided under Title VI in establishing violations under Title IX.

To establish disparate treatment, the fundamental question is why was Josh Day treated differently because of his sex. The Title IX investigator's findings clearly indicates that John Davidyock was aware that student Anthony Troup had previously touched two females on the butt and both incidents were documented according to John Davidyock statement to the Title IX investigator. The evidence also indicated that John Davidyock did not document the Plaintiffs' son's incident based on Josh's sex. Title IX does not require that the evidence must show bad faith, ill will or any evil motive on the part of the Respondent. Disparate treatment prohibits unjustified sex-based distinctions regardless of the motivation behind those distinctions.

Evidence of discriminatory intent was direct in the testimony of John Davidyock. Specifically, John Davidyock provided the historical conduct background of Anthony Troup, the sequence of events leading to Josh's incident, including Anthony Troup exposing his penis, which is a departure from standard procedure (e.g., failure to report lewd and obscene sexual harassment normally documented).

Direct proof of discriminatory intent is irrefutable. Josh Day reported the sexual harassment to John Davidyock. Because Anthony Troup was talking about playing with Josh Day's male butt versus a female butt, John Davidyock did not comply with the Title IX reporting requirements. Even if John Davidyock did not admit to failing to file a mandatory report of the incident, Title IX claims of intentional discrimination may be analyzed using the Title VII burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Applying the McDonnell Douglas principles to a Title IX claim, the Court must first determine whether the claim raises an inference of discrimination, *i.e.*, a prima facie case. The elements of Josh Day's claim include the following:

1. that Josh Day is and was a member of a protected class;

2. that Josh Day reported being sexually harassed to John Davidyock, and John Davidyock did not take the appropriate actions to prevent Josh Day from being sexually assaulted on Josh's butt;

3. that because Josh Day was a male, John Davidyock treated him differently than similarly situated female students; and,

4. that Respondent was deliberately indifferent to Josh Day's Equal Protection Constitutional Requirements for Title IX funding recipients.

The claim contains sufficient evidence to establish a prima facie case of discrimination. The Respondent cannot articulate a legitimate, nondiscriminatory reason for the Title IX violation.

The Title IX investigation report revealed that Mallard Creek High School has engaged in a "pattern and practice" of unlawful discrimination. The report provided evidence of more than the mere occurrence of isolated or accidental or sporadic discriminatory acts. The report established that a pattern of discrimination based on sex was Mallard Creeks's "standard operating procedure" - the regular rather than the unusual practice. Anthony Troup exposed himself and touched two female students on the butt. (SEXUAL ELEMENTS OF THE BODY) The existence of such a discriminatory pattern has been proven. Josh Day, a disadvantaged member of the protected class was a victim of the discriminatory policy.

It is also important to remember that Josh's claim of intentional discrimination involve the use of practices that explicitly classify individuals on the basis of sex. Such "classifications" constituted unlawful discrimination. Specifically, John Davidyock's failure to report the Title IX incident that occurred in a federally funded education/training program.

A. The Respondent is responsible for providing the security of its students and guests which it does through "Public Safety," in effect a private police force.
B. The Respondent is responsible for ensuring that all of its employees are properly trained and supervised to perform their jobs.
C. The Respondent is responsible for the acts and omissions of its employees, agents, part-time student workers and tenants.

D.  The Respondent received a report from each of the Plaintiffs concerning the events of sexual abuse and the sexual harassment their son experienced.

E.  The Respondent failed to adequately investigate the incident until Plaintiffs reported a violation of Title IX.

F.  The Respondent failed to investigate the sexual assault when it happened even though Respondent had actual notice at the time it happened.

G.  Upon the direct eye-witness-account of John Davidyock, the Respondent failed to report the criminal acts involved in the reports it received from the Plaintiffs' son on the day it happened in violation of its obligations under the Clery Act

H.  The Respondent failed to report the criminal acts involving sexual assault reports involving other victims that it received in violation of its obligations under the Clery Act.

I.  The Respondent failed to provide a safe academic environment for the Plaintiffs son; faced with the Plaintiffs' son and other student reports of sexual assault, the Respondent's response, and its officials' conduct, was such that future reasonable students in Plaintiffs's son's circumstances would be, and in fact were, chilled from reporting sexual harassment.

J.  The Respondent's employees, including high ranking officials, conspired amongst themselves, and with other EC employees, with the common purpose of violating the Clery Act in relation to the reports of sexual assault that the Plaintiffs provided them within a timely manner.

K.  The extensive detail of the Plaintiffs' reports of sexual assault, as well as the documented reports of others, to these EC employees, including John Davidyock who claimed to be untrained.

L.  The Respondent's employees, including high ranking officials, conspired amongst themselves, and with other School employees, with the common purpose of violating the Plaintiffs' rights under Title IX and the Clery Act including, but not limited to, violating their right to be informed that they could and should report the sexual assault allegations to the police and Respondent's duty to report the offense.

M. The Respondent's employees took several overt acts in furtherance of their common goal, including not informing the Plaintiffs, concealing meaningful facts from Plaintiffs, lying to the Plaintiffs, misrepresenting their actions to the Plaintiffs, failing to prosecute, investigate and report the Plaintiffs' claim, as well as the related crimes and generally failing to provide the Plaintiffs' son with a safe academic environment free from sexual harassment.

N. At all times relevant to this Complaint, Respondent failed to protect Plaintiffs' son, and others, as it negligently discharged its duty to provide safety to the students and guests of the School.

O. What is more, the Respondent, despite direction from the Department of Education and its legal requirements, did not have a certified EC teacher to replace Ms. Cooper who had left. Instead, Respondent replaced the certified EC teacher with a non-certified teacher's assistant.

P. As a direct and proximate result of the harassing educational environment created by Respondent's deliberately indifferent response to the sexual assault and subsequent harassment of the Plaintiffs' son, as well as violations of their son's state and federal legal rights, Plaintiffs's son has suffered and continue to suffer untold psychological damage, profound emotional distress, permanent loss of standing in his community and damage to his reputation, and his future relationships have been negatively affected.

Q. Plaintiffs' son has required ongoing counseling to address his depression and anxiety caused by Respondent's conduct and the resulting harassing educational environment.

R. Plaintiffs' son has also been deprived of meaningful treatment, including medical and psychological support, as a result of Respondent's conduct and the resulting traumatic environment which it caused.

S. Plaintiffs' son has also been deprived of a normal Exceptional Children's education due to Respondent's conduct and the resulting educational environment which it caused. Plaintiffs's son has also been damaged by missed educational opportunities. Also, his future earning capabilities

have been damaged by Respondent's conduct and the resulting hostile educational environment which it caused.

5. DISPARATE IMPACT

The Respondent implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiffs' constitutional, statutory, and common-law rights. Following the Title VI model, Congress delegated to each funding agency the authority to implement Title IX's prohibition of sex discrimination in educational programs or activities of recipients of federal financial assistance by issuing regulations, and those regulations have the force and effect of law. In furtherance of this broad delegation of authority, federal agencies have uniformly implemented Title IX in a manner that incorporates and applies the disparate impact theory of discrimination.

Under the disparate impact theory, the Respondent's worker, John Davidyock, violated Title IX's regulations by not reporting that Josh Day had been sexually assaulted on the butt. This had a disparate impact on Josh Day, a protected individual under Title IX. Moreover, John Davidyock's failure to report the incident, lacks a substantial legitimate justification. As in Title VI disparate impact cases, the elements of a Title IX disparate impact claim derive from the analysis of cases decided under Title VII disparate impact law.

In Josh's disparate impact case, the focus of the investigation concerns the consequences of John Davidyock's failure to report the incident, rather than John Davidyock's intent. To establish discrimination under a disparate impact scheme, the Plaintiffs asserts that John Davidyock utilized a facially neutral practice that had a disproportionate impact on Josh Day. Specifically, Josh told John Davidyock his assailant asked: "*Can I play with your butt,*" to which John Davidyock said, "*So what do you want me to do about it.*" In doing so, the Respondent must do more than demonstrate that the failure to report was a "bad idea."

To prove a "substantial legitimate justification," the [Respondent] must show that the failure to report was

"necessary to meeting a goal that was legitimate, important, and integral to the [Mallard Creek High School] mission." The Respondent's justification does not bear a "manifest demonstrable relationship" to the failure to report the incident. In reality, John Davidyock's failure to report was not demonstrably necessary to meeting an important educational goal, i.e. there was no "educational necessity" for John Davidyock to not respond to Josh's warning of the sexual assault.

The Title IX report revealed that John Davidyock had several "equally effective alternative practices" that could have prevented Josh Day's incident or resulted in less adverse impact. Evidence of John Davidyock's failure to report the incident supports a finding of liability.

Four elements were established to make out the prima facie Title IX violation:

1. Josh Day engaged in activities and asserted rights to John Davidyock protected under Title IX;

2. John Davidyock knew of the Title IX protected activity, and Anthony Troup's prior propensity to sexually assault and harass students as defined by Title IX;

3. John Davidyock thereafter subjected Josh Day to adverse action, treatment and conditions; and

4. There is a causal connection between the protected Title IX activity and the adverse action, treatment and conditions.

STATEMENT OF FACTS

*The following are direct findings from the Title IX Investigation Report.*

1. **JOSH DAY**: Stated he was walking in the gym when Anthony touched his butt. He went to the teacher (Davidyock) and told him. Additional claim was that Anthony had been talking about touching butts prior to the incident.

2. **ANTHONY TROUP:** Very limited verbal skills. Mother was needed to help understand his answers. Many of his answers were not understandable. Mom stated that Anthony had been moved

to art class after the incident (see other witness statements) and that his EC teacher (Ms Cooper) was working with Anthony using social stories to reinforce the idea that touching others is not ok.

3. **JOHN DAVIDYOCK**: Stated that Anthony was hanging around Josh and his friend "David." Stated that Josh reported to him that Anthony was talking about grabbing people's butts. Stated that he issued a verbal warning to Anthony but since he did not hear Anthony make the statement he could take no further action. Stated that he doesn't recall telling Josh there was nothing more he could do but if he did it was in relation to the verbal warning he had issued prior to the incident. Stated that he observed the incident and took Anthony's privileges away for the day as well as put Anthony in a "time out." Stated that some EC TA's believe Anthony knows what he is doing; however, he questions if Anthony knows or understands what he is doing. Stated that he does not believe this incident was sexual in nature. Stated that this is the first time he has witnessed Anthony grabbing a boy's butt. Stated that Anthony is "on the radar" of the EC staff over 2 incidents last year involving female students. Stated that this is the first incident for Anthony this year.

## CAUSES OF ACTION COUNT 1: VIOLATION OF TITLE IX 20 U.S.C. § 1681, et seq. 115.

1. The sex-based harassment articulated in this complaint was so severe, pervasive, and objectively offensive that it deprived Plaintiffs' minor son of access to educational opportunities or benefits provided by the school.
2. The Respondent created and/or subjected Plaintiffs to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because: a) Plaintiffs' son is and was a member of a protected class; b) Plaintiffs' son is and was subjected to sexual harassment in the form of a sexual assault by another student; c) Plaintiffs's son is and was subjected to harassment based on his sex; and d) Plaintiffs's son is and was subjected to a hostile educational environment created by the Respondent's lack of policies and

procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

3. Respondent and its officials had actual knowledge of the sexual assaults and the resulting harassment of Plaintiffs' son created by its failure to immediately investigate and properly discipline Plaintiffs' attackers in a timely manner and consistent with federal and state law. The Respondent's failure to promptly and appropriately respond to the alleged sexual assault and harassment resulted in Plaintiffs' son, on the basis of his sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the Respondent's education program in violation of Title IX.

4. Respondent failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment, and instead acted with deliberate indifference towards Plaintiffs' son.

5. Respondent persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiffs' son.

6. Respondent engaged in a pattern and practice of behavior designed to discourage and dissuade students and staff who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

7. This policy and/or practice constituted disparate treatment of males and had a disparate impact on male students.

8. Plaintiffs' son has suffered emotional distress and psychological damage, and his character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Respondent's deliberate indifference to their rights under Title IX.

**COUNT 2: NORTH CAROLINA TORT LAW - Negligence**

1. Respondent owed Plaintiffs' son a duty of reasonable care.
2. Respondent breached these duties in multiple ways including: a. Failing to proper hire, train and retain officers, staff and faculty as to proper methods to deal with reports of sexual abuse,

investigate same and accommodate victims in a manner that would permit them to without undue hindrance, complete their education; b. Failing to properly and timely report incidents of claims of sexual assault; c. Failing to provide adequate counseling and assistance to victims of sexual assault; d. Failing to adequately monitor and supervise departments, including EC departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation; e. Failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault; f. Failing to investigate and/or monitor persons accused of sexual assault to ensure additional events did not occur; g. Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus; h. Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault; i. Tolerating sexual assailants on campus despite reports to the highest levels of their identities; j. Failing to adopt education programs to promote awareness of sexual assault, sexual harassment, and other sex crimes; k. Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible; l. Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported; m. Failing to inform victims that they have the option of reporting the sexual assault to law enforcement authorities and that they will receive assistance from the institution in the process; n. Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault; o. Failing to put in place an accurate routine procedures to notify parents about serious criminal activity that is likely to be a threat to students and employees; p. Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct. q. Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities; and r. Failing to make the goal of protecting the campus community from

sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

3. The above enumerated breaches of duties were the proximate cause of substantial injury and damage to Plaintiffs and their son, as more specifically described herein.

4. These damages include, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; each Parent Plaintiff has suffered and continues to suffer spiritually. Plaintiff's son was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; both Parent Plaintiffs have sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully REQUEST FOR PERMANENT INJUNCTION. Plaintiffs seek a mandatory injunction ordering the Respondent to refrain from unlawful discrimination and/or retaliation, ordering Respondent to undertake and rectify any and all Title IX violations and/or inequities, ordering Respondent and its EC department to refrain from creating and condoning a hostile sexual harassment and/or discrimination environment against individuals on the basis of sex by immediately ceasing deliberate indifference to male on male sexual assaults; and cease interference with the disciplinary process in favor of students who were charged with male on male sexual assault.

**LEGAL FEES** Plaintiffs request award of their reasonable and necessary LEGAL fees for this action. See, e.g., 42 U.S.C. §§ 1983 & 1988.

**JURY DEMAND** Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

**IX. RELIEF REQUESTED** for the foregoing reasons, the Plaintiffs respectfully request that the Court enter judgment against Respondent consistent with the relief requested herein, and for any and all relief Plaintiffs may show they are entitled including actual damages, compensatory damages, nominal damages, court and litigation costs, expert fees, legal fees, statutory interest and injunctive relief.

Dated this 4th day of January, 2024

Respectfully submitted,

Cedric Dean

Susan Mills Dean

Email: savefounder@gmail.com

Phone: 704-492-1533

**CERTIFICATE OF SERVICE**

I, SUSAN MILLS DEAN and CEDRIC DEAN, hereby certify that we have served a copy of this action to the Charlotte Mecklenburg Schools, via regular mail this 4th day of January, 2024.

Respectfully submitted,

Cedric Dean

Susan Mills Dean

Email: savefounder@gmail.com

Phone: 704-492-1533