# EXHIBITS

Dear Charlotte Mecklenburg Schools:

We are writing regarding Mallard Creek High School administrators being deliberately indifferent to our son, Josh Day, being sexually assaulted by the known student-predator named Anthony. Specifically, Mallard Creek High School administrators have knowingly allowed Anthony, a special needs student, to sexually assault students and staff. Moreover, Mallard Creek High School administrators have failed to protect Josh Day and purse a criminal investigation of Anthony, the serial student predator.

Mallard Creek High School administrators who are aware of Anthony's prior sexual assaults are negligent as mandatory reporters and must be held liable civilly and criminally for contributing to the delinquency of a minor.

We have obtained information about our legal rights and we believe that:

1. Mallard Creek High School is a federally funded school
2. Josh Day suffered a sexual assault
3. Actual notice was given to the appropriate person (coach over the gym on 09-13-2023)
4. Mallard Creek High School administrators are deliberately indifferent in two ways:
   1. How they have failed to prevent Anthony from sexually assaulting students
   2. Prior sexual assaults by Anthony have been mishandled, which led to Josh Day's eventual sexual assault

As a survivor, Josh Day is entitled to certain protections:

- Survivors are in the **position of control** to decide what happens after an incident of sexual harassment, including sexual assault, occurs.
- Schools must respect **a survivor's decision** to file, or not to file, a formal complaint and must offer supportive measures either way.
- **Schools must respond promptly in every instance** by **offering to provide supportive measures** like dorm reassignments or class schedule adjustments
- **Schools are forbidden from pressuring a survivor** into filing or not filing a formal complaint or participating in a grievance process.
- To protect younger students, **K-12 schools must respond promptly when *any* school employee** has notice of sexual harassment, including sexual assault.
- The regulation extends to all aspects of a school's education program or activity and applies to **any building owned or controlled by a student organization** recognized by a college or university.
- If a survivor chooses to participate in a grievance process, the regulation protects survivors from inappropriately being asked about prior sexual history

- (also known as **"rape shield" protections**), and the survivor must not be required to divulge any medical, psychological, or similarly privileged records.
- **A survivor never has to come face-to-face** with the accused during a hearing, and an accused is never allowed to personally ask questions of a survivor.
- **Survivors are protected against retaliation** when they choose to report sexual misconduct or not, file a formal complaint or not, participate in a grievance process or not.
- **Survivors are protected against bullying or harassment** throughout the grievance process.

The underlying purpose of the law is to protect younger students, especially special needs students like Josh Day. Clearly, Mallard Creek High School administrators must respond promptly when any school employee has notice of sexual harassment, including sexual assault like what happened to Josh Day.

In order to settle our claims and thereby prevent the necessity of turning to a more formal and costly means of resolution, we request the following for settlement of all claims against Charlotte Mecklenburg Schools:

1. Compensate Josh Day for traumatic damage to his mental health in the amount of $800,000;
2. Compensate Josh Day for future therapy sessions in the amount of $300,000;
3. Agree to a criminal investigation of Anthony
4. Terminate all mandatory reporters who have been deliberately indifferent to sexual assault victims

Please be advised that if we are forced to file a civil action in this matter, our claim will be substantially greater.

There are several ways in which this matter can be resolved, including the following:

1. <u>Civil Litigation</u>. Litigation will be time consuming, extremely expensive for both parties and could result in adverse publicity. Note, of course, that the complaint filed in this matter will be a public document, and the press could show great interest in the facts of this case, something neither party is really interested in.

2. <u>Discussion</u>. The least expensive way to resolve this dispute is if CMS's counsel and us discuss the case through an exchange of correspondence, telephone calls, meetings, etc. Our experience is that if both parties are reasonable and act in good faith, we can settle matters such as these.

3. <u>Mediation/Arbitration</u>: The parties can agree to a private mediation with someone skilled in the discrimination area. This option works only if both sides are motivated to resolve the case.

This letter is written solely for the purpose of furthering settlement discussions. Therefore, neither this letter nor any of the information contained in it may be used for any purpose in any subsequent litigation.

This is a very private issue and it is very important to us that this situation be kept confidential. We understand that CMS may need to consult with a limited number of administrators about our son's specific situation, but we request that CMS let us know whom the communication is with. Additionally, we expect that, in compliance with the law, CMS will only discuss our request for compensation with those who need to know about the situation, and that CMS will ensure that they too keep this information confidential.

As you might imagine, we would prefer to address this situation informally rather than by filing a claim in federal court. We would like to come to a mutual agreement as soon as possible. Please have your legal counsel contact us by October 18, 2023 at 704-492-5509. If we do not hear from your legal counsel, we will take further action to enforce our son's Title IX rights to the full extent of the law.

Your immediate review of this matter is requested. we look forward to your reply on or before October 18, 2023. Very truly yours,

*Cedric Dean*

*Susan Mills Dean*

## CERTIFICATE OF SERVICE

I, Cedric Dean, do hereby certify pursuant to the penalty of perjury that a copy of the foregoing claim was served upon Mallard Creek High School:

This the 18th day of October, 2023.

By: *Cedric Dean*

savefounder@gmail.com
5502 MCCHESNEY DRIVE
CHARLOTTE, NC 28269



# CHARLOTTE-MECKLENBURG SCHOOLS TITLE IX INVESTIGATION REPORT

**Date of Report:** 09 Oct 2023          **Case #:** 18384

This report addresses alleged violations of the Charlotte-Mecklenburg Schools Code of Student Conduct Policies. CMS Title IX Investigator James W. Alverson Jr conducted the investigation into these allegations. This report will summarize all administrative steps taken and all relevant evidence obtained during the course of the investigation.

### Procedural History:

On 18 Sept 2023, the parents of Josh Day met with Mallard Creek HS AP, Beverly Brown, at Mallard Creek HS. They reported that they believed their son, Josh Day, had been sexually assaulted in gym class on the 13th of Sept 2023. Law enforcement was notified and a report was made but no further action was taken. On 18 Sept 2023, the Complainant submitted a formal complaint to the District Title IX Coordinator, Camille Durham.

The formal complaint was referred to James W. Alverson Jr, Investigator CMS Title IX Office, on 22 Sept 2023. The investigator was present in person or via Zoom for each interview. This investigation was completed on 26 Sept 2023.

### Involved Parties and table of timeline and interviews:

| WITNESS NAME | AFFILIATION Student, Faculty, Staff, etc. | WITNESS IDENTIFIED BY: Complainant or Respondent or Other | INTERVIEW DATE |
|---|---|---|---|
| Josh Day | Student | ID as Complainant | 25 Sept 2023 |
| Anthony Troup | Student | ID as Respondent | 25 Sept 2023 |
| Frank Ekenedo aka Mr E. | Faculty | ID by both as a trusted staff member familiar with both students | 26 Sept 2023 |
| John Davidyock | Faculty | ID by Respondent and school as the EC TA that handled the situation | 26 Sept 2023 |

### Alleged Violations:

A Notice of Investigation and Allegations (NOIA) was sent to Respondent and Complainant via email on 22 Sept 2023. The NOIA informed the parties that an investigation was being conducted pursuant to the CMS Grievance Procedures. The NOIA is included in the Evidence Files and contained the following allegations:

> Josh alleged that he was sexually assaulted by Anthony when Anthony touched him on the buttocks twice.

### Applicable Policies and Procedures:

Pending the outcome of a Title IX investigation, the District must take steps to ensure equal access to its education programs and activities and to protect the complainant from further harassment as necessary, including taking interim steps before the final outcome of the investigation. The District investigated possible violations of the policies included in the Evidence Files:

- 27B Offensive Touching UB: Harassment-Sexual: A student shall not engage in unwanted touching of an offensive or sexual nature.
- 27 E Sexual Battery *PD Sexual Assault: A student shall not intentionally engage in sexual contact (the touching of a sexual organ without penetration) for the purpose of sexual arousal, sexual gratification, or sexual abuse by force or against the will of another person. Sexual organ includes breast, anus, buttocks and genitals.

### Jurisdiction and Status:

Under Title IX, a school District receives Federal financial assistance and is responsible for providing students with a nondiscriminatory educational environment.

The District must take prompt and effective steps reasonably calculated to end the harassment, eliminate any hostile environment and its effects, and prevent the harassment from recurring. These duties are a District's responsibility regardless of whether a student has complained, asked the District to take action, or identified the harassment as a form of discrimination. Pre-investigative supportive measures include:
Complainant:
- Counseling
- Escorted movement
- Separation at lunch
- Respondent removed from class

Respondent:
- Removal from class
- Developmentally appropriate stories

### Standard of Evidence:

The "preponderance of the evidence" standard is used to determine if it is more likely than not that an incident happened as alleged. This is a lower standard than the "clear and convincing" standard which is used by the judicial system. However, the preponderance of evidence is a

viable measure to determine if an incident has happened as alleged. The "preponderance of the evidence" standard evaluates the body of evidence and the circumstances of events. The evidence is triangulated to show a convincing pattern that leans towards a likelihood that the allegation has occurred as alleged or if the evidence is insufficient to make a determination.

**Summary of Interview(s) with Complainant:**

Transcripts or complete interview notes are included in the Evidence File.

Josh spoke well, remembered key details and his story matched the video evidence.

**Additional Relevant Information Provided by Complainant:**

Additional evidence is included in the Evidence File.

Parents provided additional information that is included in the file. Some of which may or may not be more relevant to Employee Relations than to the Title IX Office.

**Summary of Interview(s) with Respondent:**

Transcripts or complete interview notes are included in the Evidence File.

Anthony was unable to verbalize that he understood what he had done was wrong without his mother's help. Anthony was able to verbalize what he had done, but it was unclear to me if he understood why this was wrong.

**Additional Relevant Information Provided by Respondent:**

Additional evidence is included in the Evidence File.

None

**Summary of Interview(s) with Witness(es):**

See Table Below

| WITNESS NAME | AFFILIATION Student, Faculty, Staff, etc. | WITNESS IDENTIFIED BY: Complainant or Respondent or Other | INTERVIEW DATE | NOTES |
|---|---|---|---|---|
| Josh Day | Student | ID as Complainant | 25 Sept 2023 | Stated he was walking in the gym when Anthony touched his butt. He went to the teacher (Davidyock) and told him.<br><br>Additional claim was that Anthony had been talking about touching butts prior to the incident. |
| Anthony Troup | Student | ID as Respondent | 25 Sept 2023 | Very limited verbal skills. Mother was needed to help understand his answers. Many of his answers were not understandable. Mom stated that Anthony had been moved to art class after the incident (see other witness statements) and that his EC teacher (Ms Cooper) was working with Anthony using social stories to reinforce the idea that touching others is not ok. |
| Frank Ekenedo aka Mr E. | Faculty | ID by both as a trusted staff member familiar with both students | 26 Sept 2023 | - Stated that Anthony has engaged in "horseplay" with others and other people have engaged Anthony in "horseplay."<br><br>- Stated that students are friends.<br><br>- Stated that many students in the class, especially the boys, will often "horseplay" with each other. Horse play is not of a sexual nature or in a sexual manner.<br><br>- Stated that students have never been upset with each other.<br>Students were in a separate class (Josh is in Habtu, Anthony is in Cooper's class *Cooper no longer with CMS)<br>Students have been separated since incident (Anthony now in Art class) |

4

| | | | | Students have not had any issues with the separation. |
|---|---|---|---|---|
| John Davidyock | Faculty | IDed by Respondent and school as the EC TA that handled the situation | 26 Sept 2023 | - Stated that Anthony was hanging around Josh and his friend "David."

- Stated that Josh reported to him that Anthony was talking about grabbing people's butts.

- Stated that he issued a verbal warning to Anthony but since he did not hear Anthony make the statement he could take no further action.

- Stated that he doesn't recall telling Josh there was nothing more he could do but if he did it was in relation to the verbal warning he had issued prior to the incident.

-Stated that he observed the incident and took Anthony's privileges away for the day as well as put Anthony in a "time out."

- Stated that some EC TA's believe Anthony knows what he is doing; however, he questions if Anthony knows or understands what he is doing.

- Stated that he does not believe this incident was sexual in nature.

- Stated that this is the first time he has witnessed Anthony grabbing a boy's butt.

- Stated that Anthony is "on the radar" of the EC staff over 2 incidents last year involving female students.

- Stated that this is the first incident for Anthony this year. |

**Additional Evidence Collected:**
- Written statements from Davidyock and Complainant (transcribed by AP Brown)

This complaint and associated investigation report are being referred to Denise Cyrus for a final determination pursuant to District policy and federal law.

Respectfully submitted,

*[signature]*

James W. Alverson Jr CMS TIX Investigator09 Oct 2023

**Evidence File Documents**
Investigation Timeline
Notice of Investigation and Allegations
Applicable Policies
Additional Relevant Information Provided by Complainant
Additional Relevant Information Provided by Respondent
Relevant School-Related Information
School Security Footage
Complete Interview Notes for Complainant
Complete Interview Notes for Respondent
Complete Interview Notes for Witness 1
Complete Interview Notes for Witness 2

Dear Title IX Investigator:

We have reviewed the report that you provided. Here's our issues:

## 1. Disparate Treatment

Disparate treatment refers to actions that treat female students differently on the basis of a prohibited classification. In the case of Josh Day, the prohibited classification is sex. Under the disparate treatment theory of discrimination, the core question is whether Mallard Creek High School, through John Davidyock, has treated Josh Day differently on the basis of sex. Here, the applicable legal standards under Title VI and Title IX are generally identical and investigative officials can rely on case law decided under Title VI in establishing violations under Title IX.

To establish disparate treatment, the fundamental question is why was Josh Day treated differently because of his sex. The evidence clearly indicates that John Davidyock was aware that the Respondent had previously touched two females on the butt and both incidents were documented according to John Davidyock. The evidence also indicated that John Davidyock did not document the incident at least in part based on Josh's sex. Title IX does not require that the evidence must show bad faith, ill will or any evil motive on the part of John Davidyock. Disparate treatment prohibits unjustified sex-based distinctions regardless of the motivation behind those distinctions.

Evidence of discriminatory intent was direct in the testimony of John Davidyock. Specifically, John Davidyock provided the historical conduct background of the Respondent, the sequence of events leading to Josh's incident, including the Respondent exposing his penis, which is a departure from standard procedure (e.g., failure to report lewd and obscene sexual harassment normally documented).

Direct proof of discriminatory intent is irrefutable. Josh Day reported the sexual harassment to John Davidyock. Because the Respondent was talking about playing with male butts versus female butts, John Davidyock did not comply with the Title IX reporting requirements. Even if John Davidyock did not admit to failing to file a mandatory report of the incident, Title IX claims of intentional discrimination may be analyzed using the Title VII burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[38]

Applying the McDonnell Douglas principles to a Title IX claim, the investigating agency must first determine whether the case file raises an inference of discrimination, *i.e.*, the investigating agency must establish a prima facie case. The elements of Josh Day's claim included the following:

1. that Josh Day was a member of a protected class;

2. that Josh Day reported being sexually harassed to John Davidyock, and John Davidyock did not take the appropriate actions to prevent Josh Day from being sexually assaulted on Josh's butt;

3. that because Josh Day was a male, John Davidyock treated him differently than similarly situated female students; and,

4. that Mallard Creek High School was deliberately indifferent to Josh Day's Equal Protection Constitutional Requirements for Title IX funding recipients.

The case file contains sufficient evidence to establish a prima facie case of discrimination. John Davidyock cannot articulate a legitimate, nondiscriminatory reason for the Title IX violation.

The case file revealed that Mallard Creek High School has engaged in a "pattern and practice" of unlawful discrimination. The evidence was more than the mere occurrence of isolated or accidental or sporadic discriminatory acts. The evidence established that a pattern of discrimination based on sex was Mallard Creeks's "standard operating procedure - the regular rather than the unusual practice. The Respondent exposed himself and touched two female students on the butt. (SEXUAL ELEMENTS OF THE BODY) The existence of such a discriminatory pattern has been proven. Josh Day, a disadvantaged member of the protected class was a victim of the discriminatory policy.

It is also important to remember that Josh's claims of intentional discrimination involved the use of practices that explicitly classify individuals on the basis of sex. Such "classifications" constituted unlawful discrimination. Specifically, John Davidyock's failure to report the Title IX incident that occurred in a federally funded education/training program.

## 2. Disparate Impact

Following the Title VI model, Congress delegated to each funding agency the authority to implement Title IX's prohibition of sex discrimination in educational programs or activities of recipients of federal financial assistance by issuing regulations, and those regulations have the force and effect of law. In furtherance of this broad delegation of authority, federal agencies have uniformly implemented Title IX in a manner that incorporates and applies the disparate impact theory of discrimination.

Under the disparate impact theory, John Davidyock violated Title IX's regulations by not reporting that Josh Day had been sexually assaulted on the butt. This had a disparate impact on Josh Day, a protected individual under Title IX. Moreover, John Davidyock's failure to report the incident, lacks a substantial legitimate justification. As in Title VI disparate impact cases, the elements of a Title IX disparate impact claim derive from the analysis of cases decided under Title VII disparate impact law.

In Josh's disparate impact case, the focus of the investigation concerns the consequences of John Davidyock's failure to report the incident, rather than John Davidyock's intent. To establish discrimination under a disparate impact scheme, the investigator must first ascertain whether John Davidyock utilized a facially neutral practice that had a disproportionate impact on Josh Day. In doing so, the investigator must do more than demonstrate that the failure to report was a "bad idea."

To prove a "substantial legitimate justification," John Davidyock must show that the failure to report was "necessary to meeting a goal that was legitimate, important, and integral to the [Mallard Creek High School] mission." John Davidyock's justification does not bear a "manifest demonstrable relationship" to the failure to report the incident. In reality, John Davidyock's failure to report was not demonstrably necessary to meeting an important educational goal, i.e. there was no "educational necessity" for John Davidyock.

The evidence revealed that John Davidyock had several "equally effective alternative practices" that could have prevented Josh Day's incident or resulted in less adverse impact. Evidence of John Davidyock's failure to report the incident supports a finding of liability.

Four elements were established to make out the prima facie Title IX violation:

1. Josh Day engaged in activities and asserted rights to John Davidyock protected under Title IX;

2. John Davidyock knew of the Title IX protected activity, and the Respondent's prior propensity to sexually harass students as defined by Title IX;

3. John Davidyock thereafter subjected Josh Day to adverse action, treatment and conditions; and

4. There is a causal connection between the protected Title IX activity and the adverse action, treatment and conditions.

Based on the foregoing issues, John Davidyock's failure to report the incident supports a finding of Title IX liability.

Please consider this our official 10-day reply.

*Cedric Dean*

*Susan Mills Dean*

   SAFEGUARD ATONE VALIDATE EDUCATE SAVE
&lt;savefounder@gmail.com&gt;

# APPEAL
1 message

**SAFEGUARD ATONE VALIDATE EDUCATE SAVE**　　　　　　　　　Tue, Nov 7, 2023
&lt;savefounder@gmail.com&gt;　　　　　　　　　　　　　　　　　　at 11:03 AM
To: denisee.cyrus@cms.k12.nc.us, SUE &lt;millssusan28@gmail.com&gt;,
jared1.thompson@cms.k12.nc.us

NOTICE OF APPEAL

Date: November 7, 2023

RE: Complaint # 18384

This letter outlines our Charlotte-Mecklenburg Schools Title IX Office appeal
denial for the resolution of the formal complaint
filed against Anthony Troup on 8/18/23.

We submitted a formal complaint to the Title IX Coordinator alleging that the Respondent engaged in behaviors that violated the Charlotte-Mecklenburg Schools Code of Student Conduct on 9/13/23 in the Mallard Creek High School gymnasium. Specifically, we alleged Anthony Troup sexually assaulted Josh Day when he touched Josh on the buttocks. Mr. James W. Alverson Jr., CMS Title IX Investigator, conducted a formal investigation of the allegations, and the final investigation report served as the basis for the decision maker's determination of responsibility pursuant to the district policy.

This letter serves to inform your office that we are appealing the decision in compliance with Federal Law and Charlotte-Mecklenburg Schools Title IX policy.

We appreciate your time and cooperation during this appeal process.

If you have any questions contact Cedric Dean, Josh's legal parent with Susan Mills Dean. (704-492-5509.

Thank you again for your cooperation and patience.
Sincerely,

Susan Mills Dean, Parent of Josh Day
Cedric Dean,

# TITLE NCXIX and TITLE NCXXI PREVENTION PROFESSIONAL
**NPI**: 1114647013

**CAQH**: 15706719

contact@cedricdean.com
www.cedricdean.com
704-492-1533



Office of General Counsel
600 East 4th Street, 5th Floor
Charlotte, North Carolina 28202

October 5, 2023

**VIA EMAIL AND USPS**
Mr. Cedric Dean
Mrs. Susan Mills Dean
5502 McChesney Drive
Charlotte, NC 28269
savefounder@gmail.com

RE: Charlotte-Mecklenburg Schools Response to Registered Notice of Intent

Dear Mr. and Mrs. Dean,

I am responding to your September 18, 2023 letter alleging that your son, Josh, was sexually assaulted at Mallard Creek High School. You claim that Mallard Creek is being deliberately indifferent to Josh, and you demanded more than one million dollars in damages, the termination of employees, and that CMS "agree to a criminal investigation" of the other student.

You claim that Josh was sexually assaulted on September 13, 2023 when another student touched him two times on the behind. You notified the school of this incident on September 18, 2023 when you filed a Title IX formal complaint and sent your letter. Your complaint is currently being investigated in accordance with Charlotte-Mecklenburg Schools' Title IX grievance process. The Title IX regulations require that a school must respond promptly to sexual harassment in a manner that is not deliberately indifferent, which means in a way that is not clearly unreasonable considering the known circumstances.

Charlotte-Mecklenburg Schools (CMS) has not been deliberately indifferent to your claims. The District took immediate action to investigate your allegations as soon as notice was given to Mallard Creek on September 18, 2023. The investigation is ongoing and supportive measures are being provided to Josh. CMS has no authority "to agree to a criminal investigation" of the other Student. The District is fulfilling its Title IX obligations, and the Title IX office will be in contact with you throughout the grievance process. Therefore, the District is not willing to pay any damages or participate in mediation.

Sincerely,

Heather Bankert
Senior Associate General Counsel

Phone: 980-343-6228 ■ Fax: 980-343-5739 ■ www.cms.k12.nc.us

In compliance with federal law, Charlotte-Mecklenburg Schools administers all education programs, employment activities and admissions without discrimination against any person on the basis of gender, race, color, religion, national origin, age, or disability.